## Sumption, Appellant, v. Rogers (No. 1).

*Mechanic's lien—Apportionment of claim—Building separated by public street—Constitutional law—Extra work—Act of June 4, 1901, P. L. 431—Amendment.*

1. Any provision of the mechanic's lien Act of June 4, 1901, P. L. 431, which is clearly divergent from and is an advance upon the law as it stood prior to the constitution of 1874, is to be regarded as invalid as offending against sec. 7, art. III, of the constitution which provides that the general assembly shall not pass any local or special law "providing or changing methods for the collection of debts or the enforcing of judgments."

2. If sec. 12 of the Act of June 4, 1901, P. L. 431, which provides that "no apportioned claim shall hereafter be allowed, but separate claims with the amount due determined by apportionment, may be filed as herein set forth," be construed to cover cases where buildings are separated by a public street, it violates art. III, sec. 7, of the constitution. The section so construed would be clearly divergent from and an advance upon the law as it stood in 1874.

3. Where a mechanic's lien is based exclusively on an apportionment among buildings in different blocks and separated by public streets, the claim is invalid, and cannot after the expiration of the statutory period for filing, be amended by attaching to the claim a bill of particulars showing the kinds and quantity of materials delivered to and actually used in the building, the time when the work was done, and the amount of labor furnished therefor.

4. A claim in a mechanic's lien for extra work in plastering two rooms for a lump sum stated, will be sustained where it appears that the claim is filed by the contractor, and not a subcontractor, and avers that the work was done at the request of the owner, that the price was reasonable, and was agreed to by the owner.

Argued Oct. 24, 1912. Appeal, No. 160, Oct. T., 1912, by plaintiff, from orders of C. P. No. 1, Phila. Co., March Term, 1912, No. 792, M. L. D., making absolute and discharging certain rules in case of James D. Sumption v. Calvin W. Rogers and David R. Carson, Owner or Reputed Owner. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Reversed in part.

Rules to strike off, and rule to amend.

From the record it appeared that claimant filed a

mechanic's lien to secure payment of a balance amounting to $499.04 due on a contract, and extra work amounting to $37.50, making a total of $536.54.

The defendant filed a petition, upon which the court allowed three rules to show cause why the said lien, as a whole, or certain items thereof, should not be stricken from the record. The claimant filed a petition upon which the court allowed a rule to show cause why the lien should not be amended by attaching a bill of particulars and a copy of the specifications according to which the work was done. The court made absolute the three rules taken by defendants and discharged claimant's rule to amend his lien.

The facts relating to the apportionment of the lien are stated in the opinion of the Superior Court.

*Errors assigned* were as follows:

1. The court below erred in making absolute defendants' rule to show cause why the item of $499.04, the balance of said apportioned contract price, should not be stricken from the lien filed.

2. The court below erred in making absolute rule on claimant to show cause why the item of extra work amounting to $37.50 should not be stricken out.

3. The court below erred in making absolute defendants' rule on claimant to show cause why the lien filed should not be stricken off the record.

4. The court below erred in discharging claimant's rule to show cause why the lien should not be amended in accordance with the prayer of the petition filed.

*John G. Johnson,* with him *Bruce A. Metzger,* for appellant.—Separate liens with the amount due determined by apportionment are permissible under the act of 1901. The fact that public streets separate the several buildings is not of itself fatal. It may necessitate proof upon the trial of the scire facias that claimant's materials and labor actually went into the building liened in proportion, as the

amount claimed bears to the whole contract, but until he fails in that his lien is sufficient, and should not be struck off: Todd v. Gernert, 223 Pa. 103.

It is not necessary in construing sec. 12 of the act of 1901 to depart from the well-known canons of construction, one of the most elementary of which is, that, "It is a first and cardinal rule of construction that where the words of an act are clear, and there is no ambiguity, they will be presumed to carry the legislative intent, and the court will construe the act according to the plain meaning of its terms:" Dame's Appeal, 62 Pa. 417; Haddock v. Com., 103 Pa. 243; Philadelphia v. Spring Garden Farmers' Market Co., 161 Pa. 522; Pettit v. Fretz, 33 Pa. 118.

A brief review of the decisions of our courts in addition to the legislation above outlined, shows that there has been a constant relaxation of the old rule that in order to support an apportioned lien, the houses must be adjacent.

The claim is sufficiently stated: Thirsk v. Evans, 211 Pa. 239; Warren v. Johnston, 33 Pa. Superior Ct. 617; Vansciver v. Churchill, 35 Pa. Superior Ct. 212; Bohem v. Seel, 185 Pa. 382; Wilson v. Canevin, 226 Pa. 362; Ferguson v. Chambers, 20 Pa. Dist. Rep. 937.

The item of $37.50 for plastering two additional rooms in the basement should not have been struck off: Northern Elec. Mfg. Co. v. Brewing Co., 47 Pa. Superior Ct. 96.

Claimant's amendment should have been allowed: Schultz v. Asay, 10 W. N. C. 33; Thirsk v. Evans, 211 Pa. 239; Warren v. Johnston, 33 Pa. Superior Ct. 617; Day v. R. R. Co., 35 Pa. Superior Ct. 586; Nagle v. Garrigues, 46 Pa. Superior Ct. 155; Sinnott v. Beard, 14 Pa. Dist. Rep. 619; Burns v. Judge, 12 Luzerne Leg. Reg. 425; Wyoming Valley Lumber Co. v. Turnbach, 30 Pa. C. C. Rep. 408; Hoover v. Lebo, 30 Pa. C. C. Rep. 582.

*Edward Hopkinson, Jr.*, and *Abraham M. Beitler*, with them *A. S. Ashbridge, Jr.*, for appellee.—An "apportioned claim" could never be filed against buildings separated by a public street. In Chambers v. Yarnall,

15 Pa. 265, down to Bradley v. Gaghan, 208 Pa. 511, such claims were held bad. Some of these cases, like that of Lucas v. Hunter, 153 Pa. 293, were decided on rule to strike off the lien. In other cases like Schultz v. Asay, 10 W. N. C. 33, and 11 W. N. C. 194 (2 Pennypacker, 411), and Jeannette Planing Mill Company v. Greenawalt, 11 Pa. Superior Ct. 157; Campbell v. Furness, 1 Phila. 372; Goepp v. Gartiser, 35 Pa. 130; Boyd v. Mole, 9 Phila. 118; French v. Kaign, 3 W. N. C. 495; Bradley v. Anderson, 20 Pa. C. C. Rep. 236, the defect became apparent only at the trial.

The act of 1901 enacted that where formerly a claimant might have filed either a joint apportioned claim or separate claims with the amounts due in each designated by apportionment, now he can only file the separate claims.

Appellant's interpretation of this clause would make it violate art. III, sec. 7, of the constitution of Pennsylvania: Page v. Carr, 232 Pa. 371.

Appellant's argument in regard to the right to amend is entirely based upon the premise that his lien as originally filed contained all the essentials of a good lien and that the court was in error in its decision upon the apportionment question: Grier v. Assurance Co., 183 Pa. 334; American Brick & Tile Co. v. Drinkhouse, 36 Atl. Repr. 1034.

OPINION BY RICE, P. J., February 27, 1913:

It is alleged, in the mechanic's lien under consideration, that, by the terms of an oral contract between the claimant and the owner, the claimant was to plaster and furnish the materials for plastering nineteen dwelling houses on the south side of Walnut street west of 49th street, ten dwelling houses on the west side of 50th street between Walnut and Locust streets, one apartment house on the northeast corner of 50th and Chancellor streets, and one apartment house on the northwest corner of 50th and Locust streets, for the sum of $11,700, and that the work was to be done and the materials were to be

furnished as the erection of the buildings (being then under way) progressed and required the plastering to be done; also that the contract was fully executed by complete performance on his part and acceptance of the plastering work by the owner. For present purposes these allegations must be accepted as true. It further appears by the claim, that the claimant determined the amount chargeable against the building and curtilage in question, being the apartment house at the northwest corner of 50th and Locust streets, by apportioning the entire sum of $11,700 among the several buildings above mentioned. This apportionment, showing the sum chargeable against each of the buildings, is set forth at length in the claim and is alleged to be fair and just. It may be that, on the trial of a scire facias on the claim, the claimant would have difficulty in proving the fairness and justice of the apportionment; but it cannot be declared at this stage of the proceedings, and on the facts now before us, that these matters are not susceptible of satisfactory proof. Hence, it must be assumed, for present purposes, that, though the buildings are not adjoining, a fair and just apportionment of the entire cost of plastering was possible and was made.

These preliminary observations lead up directly to the first substantial question to be decided, which is, whether the law permits a separate mechanic's lien to be filed against one of a number of separate dwelling houses included in one contract between the claimant and the owner, and authorizes the determination of the amount due and chargeable against each house by apportionment, where the houses do not adjoin, but are separated by public streets.

It must be conceded that, under earlier legislation relating to apportionment of claims, particularly sec. 4 of the Act of March 30, 1831, P. L. 242, sec. 13 of the Act of June 16, 1836, P. L. 695, and sec. 38 of the Act of April 25, 1850, P. L. 569, the trend of judicial decision was towards a liberal, rather than a strict, construction

of the word "adjoining," which appears only in the act of 1831. It was shown by Mr. Justice MITCHELL, in Gordon v. Norton, 186 Pa. 168, upon an elaborate review of the · earlier cases, "that houses may adjoin within the meaning of the statute, by their curtilages, even though the latter be separated by a private alley, or even by a space intended for a street but not opened or dedicated at the time the work was commenced." And this view was in accordance with several cases directly on the point, amongst which may be mentioned Fitzpatrick v. Allen, 80 Pa. 292; Kline's App., 93 Pa. 422; and Atkinson v. Shoemaker, 151 Pa. 153. But notwithstanding this liberality of construction, it was conceded by Justice MITCHELL, in the same connection, and was expressly decided in Schultz v. Asay, 2 Penny. 411, 10 W. N. C. 33, 11 W. N. C. 194, and Lucas v. Hunter, 153 Pa. 293, that the "adjoining" is severed by an intermediate street. See, also, Bradley v. Gaghan, 208 Pa. 511. So that it seems to be settled beyond question, that a single apportioned claim against all of the houses embraced in this contract would not have been sustained by earlier legislation and the decisions under it. But although the work was done and the materials were furnished under one contract including all the houses, yet the reasoning of the opinion in Gordon v. Norton would have sustained a separate lien against each house, provided the claimant could show and specified in his claim the work and materials which went into each house. Upon the principle that the greater power includes the less, this conclusion is also involved in and supported by the ruling made in that case, which was, "that where there are blocks of buildings so differing in size, style, material, location or time of erection that the materials or labor going into their construction may be readily distinguished and ascertained, the lien claimant may if he chooses file a separate claim against each block, apportioned among its own constituent houses, although all the blocks are erected by the same contractor under one

contract, with the same owner." So that the difficult question in the case is not whether the plaintiff could file a separate lien against each house, but whether, in the absence of a provision in the contract apportioning the entire contract price among the several houses and designating the portion thereof which was payable on account of the work done and materials furnished to each, the claimant could in such separate claim determine the amount due by such apportionment. Our examination of the previous legislation and the decisions under it—particularly Schultz v. Asay, 2 Penny. 411, 10 W. N. C. 33, 11 W. N. C. 194,—leads us to the conclusion that prior to the Act of June 4, 1901, P. L. 431, this could not be done in a case where the buildings are separated by a public street. This was because the statutes then in force did not expressly permit it, not because as between the contractor and the owner it could not be under any circumstances, or would not be under the circumstances so far developed in this case, a perfectly fair, just, and convenient mode of ascertaining the amount chargeable against each house.

This brings us to a consideration of the mechanics' lien act of 1901, which repealed all prior acts relating to the subject-matter, and, according to its own declaration, was intended to "furnish a complete and exclusive system, in itself, so far as relates to liens for labor or materials commenced to be furnished after its approval." The particular part of the act with which we are concerned in this case is the last clause of sec. 12, and it reads as follows: "No apportioned claim shall hereafter be allowed, but separate claims, with the amount due determined by apportionment, may be filed as herein set forth." If the word "adjoining" had been inserted in this clause there would be propriety in consulting decisions under prior mechanics' lien laws in which it appeared, to ascertain the meaning then ascribed to it by the courts, and there would be plausibility in the supposition that the legislature used it in the same sense in this statute. But

the word does not appear, and, therefore, in order to make these earlier decisions applicable, we must, in effect, read it into the clause and thus assume that the legislature intended the provision as to separate liens to apply only to adjoining houses. We find nothing in the context or in the nature of the subject-matter to warrant such assumption. On the contrary, when the incongruities that had resulted under the former laws are considered, and it is remembered that all these laws were repealed and a complete and exclusive system in itself was established in their place, there is very strong reason for believing that the legislature omitted the word "adjoining" from this statute intentionally. At any rate, there is no substantial ground for presuming that it was not omitted intentionally. It was not necessary to give sense to the enactment, nor to prevent absurd results. Of course, the authority of the courts to construe statutes involved in litigated cases would not be exceeded by a judicial declaration that the clause was not intended to apply to a case where, by reason of its admitted or indubitably proved special circumstances, it would be impossible to determine, by apportionment, the amount justly and equitably chargeable against each house. But to hold that the clause does not apply in any case where the houses are separated by a street would not be judicial construction, but the supplying of a qualifying provision which the legislature saw fit to omit. If the case rested here, we would be of opinion that the lien was sustainable under this clause of the statute notwithstanding the fact that the buildings included in the contract are separated by public streets.

But it is argued that, unless the clause be construed to exclude cases where the buildings are separated by a public street, it is, as to such cases, in conflict with sec. 7, art. III of the constitution, which provides that the general assembly shall not pass any local or special law "providing or changing methods for the collection of debts or the enforcing of judgments." As shown in Lehigh

Iron Co. v. Lower Macungie Twp., 81 Pa. 482, there are
instances in the constitution of immediate repeal thereby
of existing laws. But these are exceptional, and the con-
struction uniformly given to sec. 7 of art. III has been
that it is prospective and intended merely to impose
limits on future legislation: Evans v. Phillipi, 117 Pa. 226;
Com. v. Brown, 210 Pa. 29. In accordance with this
general view, it has been held that this particular clause
of sec. 7, art. III, did not operate to repeal mechanics'
lien laws in existence at the adoption of the constitution,
although such laws are deemed to be essentially special
in their nature because they provide a method by which
a special class of creditors may collect a special class of
debts: Vulcanite Portland Cement Co. v. Allison, 220
Pa. 382. Justice ELKIN said in that case: "A fair con-
struction of the constitution leads to the conclusion that
the intention of its framers was not to prohibit legisla-
tion relating to old methods for the collection of debts
or the enforcing of judgments recognized and in general
use at the time of its adoption, but to prevent the enact-
ment of local and special laws providing new methods
or changing old ones and applicable only to particular
localities or to special classes. The language of the con-
stitution is that no local or special law shall be passed
'providing or changing methods for the collection of
debts or the enforcing of judgments.' This can only
mean that the local or special legislation prohibited is
such as provides new methods, not then in existence,
or changes old methods, then existing, for these purposes.
The mechanics' lien laws proper do not fall within this
prohibition because they do not provide a new method
for the collection of a debt or the enforcing of a judgment.
The procedure under these statutes is an old method.
It is a proceeding in rem, well understood and of general
application at the time of the adoption of the constitution."
Applying these principles, it was held in that case that
sec. 28 of the act of 1901, which gives to a subcontractor
or material man a right to issue an attachment against

the owner or other party indebted to the contractor for labor or materials furnished, is special legislation in favor of a special class of creditors and offends against this section of the constitution. Upon the same principle, it was held in Vulcanite Paving Co. v. Phila. Rapid Transit Co., 220 Pa. 603, that sec. 46 of the act, which provides that, where judgment is recovered upon any mechanic's claim, the property named in which is essential to the business of a public service corporation, the claimant shall have execution thereupon as in other cases of judgment against corporations, is prohibited special legislation, and that the method of enforcing the lien being inoperative the lien itself must fall. The broader question, whether the extension of the right to file a mechanic's lien against a power house of a public service corporation, which, under previous laws, was not subject to such lien, would have been constitutional if the manner of its enforcement had been made the same as in the case of other mechanics' liens, was left undecided because not necessary to the determination of the case then before the court. In Henry Taylor Lumber Co. v. Carnegie Institute, 225 Pa. 486, sec. 38 of the act, which permits mechanics' liens to be filed against a building without reference to the ownership of the land, and provides for the sale and removal of the building for the benefit of lien holders, was held unconstitutional because it goes far beyond any enactment relating to mechanics' liens in force at the time of the adoption of the present constitution. Justice BROWN said: "The whole act of 1901 is legislation for a special class of creditors, some of the provisions of which are permissible because the constitution of 1874 did not intend to wipe out the system to which they relate; but those providing special methods or changing old ones for the collection of the debts due the special class of creditors or for the enforcement of judgments recovered by them are prohibited by the organic law." It was argued in Sterling Bronze Co. v. Syria Imp. Assn., 226 Pa. 475, that the act provides that a judgment on

a sci. fa.. against the person with whom the claimant has contracted has the effect of a personal judgment, although the claim against the building may be defeated; but it was held that any provision of the act which gave the judgment in the proceeding in rem that effect was unconstitutional for the reasons given in the above-cited cases. In Page v. Carr, 232 Pa. 371, the provision of sec. 13 of the act, which gives priority to mechanics' liens over advance money mortgages, was held to be prohibited special legislation because it gives to mechanics' liens a preference and a priority of payment that they did not have and to which they were not entitled before the adoption of the present constitution. After citing the above cases and quoting the above excerpt from the opinion of Justice BROWN in Henry Taylor Lumber Co. v. Carnegie Institute, 225 Pa. 486, Justice POTTER said: "The result of the decisions above noted, is to make it clear that any provision of the act of 1901 which is clearly divergent from, and is an advance upon the law as it stood prior to the constitution of 1874, is to be regarded as invalid." This statement of the controlling principle was cited by Chief Justice FELL, with apparent approval, in Sax v. School Dist. of 237 Pa. 68, the latest case upon the subject. It was there held that the Act of May 6, 1909, P. L. 441, which authorizes the creation of a lien for the price of labor and materials upon moneys of municipal and quasi-municipal corporations applicable to the construction of public improvements, provides a new method by which a special class of creditors may collect a special class of debts, and is, therefore, unconstitutional. The only case cited by appellant's counsel which can be said to bear even indirectly upon the question now under consideration, is Wirsing v. Penna. Hotel & Sanitarium Co., 226 Pa. 234. The question was as to the curtilage. By the act of 1836 curtilage extended to the ground covered by the building and to so much other ground "immediately adjacent thereto " as was necessary for the immediate and useful purposes of the building. But by the act of 1901 the

curtilage appurtenant to the structure is declared to be "such as is reasonably needed for the general purpose for which such structure or other improvement was made and belonging to the same owner." In the case cited, a lien was sustained against a hotel property and a lot separated from the hotel by a railroad and intervening private property, it being shown that on the lot was a mineral spring and that it was the intention of the owners to use the hotel, in connection with the spring, as a sanitarium, and to construct on the spring lot a plant for supplying light and heat to the hotel. After referring to the provision of the act of 1836 restricting the curtilage to the ground immediately adjacent, Justice BROWN said: "But there is no such limitation in our present act, and it is, therefore, a question under conditions existing in any particular case what other land of the owner of the building in addition to the lot upon which it is being erected, shall be bound by a mechanic's lien, as being 'reasonably needed for the general purpose' of the structure." It must be conceded that, on their facts, that case and the present have a strong analogy; but, judging from the opinion of the court and the report of the case, the legal question raised was as to the construction of the provision of the act of 1901 relating to curtilage, and the question of the constitutionality of that provision was not raised. Therefore, the case cannot be regarded as modifying or qualifying the general principles laid down in the cases, both before and since, in which the constitutional question was raised and considered.

In an earlier part of this opinion it has been shown that, while the law as it stood at the time of the adoption of the constitution of 1874 permitted a separate mechanic's lien to be filed against one of a number of separate dwelling houses included in one contract, provided the claimant could show and specified in his claim the work and materials that went into each house, it did not (in the absence of a provision in the contract apportioning the entire contract price among the several houses and designating

the portion thereof which was payable on account of the work done and the materials furnished to each) authorize such claim to be filed upon the basis of an apportionment of what was due the claimant on his entire contract, where the houses were in no sense adjoining, but were situated in different blocks and separated by public streets. We see no escape from the conclusion that the above quoted clause of sec. 12 of the act of 1901, which seemingly extends the right of the claimant to make an apportionment the basis of his claim in such case, is clearly divergent from and an advance upon the law as it stood in 1874, and, to that extent, is in conflict with sec. 7, art. III of the constitution. It follows that the claim in question, as originally filed, was invalid as to the principal sum.

The foregoing conclusion renders it necessary to consider the claimant's application to amend, which was made after the defendant had moved to strike off the lien, and more than six months after the last work was done. So far as it related to amending the claim by attaching a copy of the specifications under which the work on this particular building was done, the reasons given for not attaching them originally seem to bring the case within the rulings in Thirsk v. Evans, 211 Pa. 239; Warren v. Johnston, 33 Pa. Superior Ct. 617, and Day v. Penna. R. R. Co., 35 Pa. Superior Ct. 586. But as there is nothing in the specifications, as set forth in the application, that would remove the objection to the claim heretofore considered, the refusal to allow this amendment was harmless error, unless the other amendment prayed for should have been allowed, and, if allowed, would have removed that objection and given vitality to the lien. This other proposed amendment was to attach to the claim a bill of particulars showing the kinds and quantity of materials delivered to and actually used in the building, the times when the plastering work was done, and the amount of labor furnished therefor. It is argued that the fact that the statutory period, within which a claim could

be filed had expired, was not, of itself, fatal "as the lien on its face contained all the essentials of a good lien, and the amendment simply rendered it more specific." If the premises be correct, the conclusion naturally follows. It was upon this principle that an amendment making the description of the property more accurate was sustained in Nagle v. Garrigues, 46 Pa. Superior Ct. 155. But we cannot agree that the claim in question contained all the essentials of a good lien, or was good in substance and merely defective in form. As heretofore shown, it was based exclusively on an apportionment, and this cannot be made the basis of a valid claim where the buildings included in the contract are in different blocks and separated by public streets. The proposal is to convert the claim filed on that basis, which was fatally defective, into a claim based on the work and materials that actually went into the house. If the amendment proposed would have the effect claimed for it, it would be analogous to amending a declaration, in an action at law, by substituting a new cause of action for that declared on, after the action had been barred by the statute of limitations. It would be, in effect, to extend the time for filing a claim after that time had expired. Prior to the Act of June 11, 1879, P. L. 122, no material amendment of a mechanic's lien could be made after the expiration of the period for filing: Dearie v. Martin, 78 Pa. 55. And even under that act, which was quite liberal in its provisions, an amendment involving such radical departure from the claim filed as is under consideration here, was not permissible after the expiration of that period: Knox v. Hilty, 118 Pa. 430; McFarland v. Schultz, 168 Pa. 634. The controlling principle was very clearly shown by Justice GREEN in Grier v. Northern Assurance Co., 183 Pa. 334, 348, 349. And in Forst's License, 208 Pa. 578, it was said, by way of analogy: "In mechanics' lien cases, it is clearly settled that amendments going to the jurisdiction will not be allowed after the time allowed by the statute for filing has expired." No de-

cision of the Supreme Court or of this court, rendered under the act of 1901, has been called to our attention, which goes so far as to sustain an amendment radically changing the basis of the claim after the time for filing a claim on the new basis has expired, and it is beyond question that no such right was recognized prior to the adoption of our present constitution. We conclude that the court committed no error in refusing to allow the amendment.

There remains to be considered the item, "Extra work of plastering two additional rooms during progress of the work $37.50." The averment of the claim relating to this item reads as follows: "During the progress of the said work, claimant did a certain amount of extra work in the said apartment house by plastering two additional rooms in the basement, for which work claimant charged the sum of thirty-seven dollars and fifty cents, which sum was fair and reasonable and the said work being done at the request of the said Calvin W. Rogers, and the said price agreed to by him." If this item did not rest on a special contract between the claimant and the owner to do the plastering of these two rooms for a specified sum, the objection that it is a lumping charge would be well taken: Wharton v. Real Est. Investment Co., 180 Pa. 168; Lee v. Exeter Club, 9 Pa. Superior Ct. 581. But there is a well-settled distinction between a claim based on such contract and the claim of a subcontractor. See Lee v. Burke, 66 Pa. 336; Young v. Lyman, 9 Pa. 449; Bohem v. Seel, 185 Pa. 382; Vansciver v. Churchill, 35 Pa. Superior Ct. 212. In the former case there is not the same reason as there is in the latter for requiring the claim to set forth more specifically than was done here the nature or kind of the work done and the kind and amount of the materials furnished. We are of opinion that this item of the claim is sustained by the above-quoted averment and, therefore, there was error in striking it off.

It results, from the foregoing conclusions, that the

first and fourth assignments of error must be overruled, but that the second and, consequently, the third are sustained.

The order striking from the lien the item, "$499.04 balance of said apportioned contract price," and the order discharging the claimant's rule to show cause why the claim should not be amended, are affirmed; the order making absolute the defendants' rule to strike from the lien the item, "Extra work of plastering two additional rooms during progress of work $37.50," and the order making absolute the rule to strike off the entire lien, are reversed, and the lien is reinstated as to the item of $37.50 for extra work.