## Scranton Chemical Company v. Edwardsville Borough

*Thomas F. Farrell*, for plaintiff; *Reynolds & Reynolds*, for defendant.

COUGHLIN, J., May 31, 1932.—Plaintiff obtained judgment on August 26, 1931, against defendant before a justice of the peace of Luzerne County. Judgment was subsequently entered in the court of common pleas and a writ of mandamus execution followed. Defendant, alleging that plaintiff did not, as required by the Act of April 22, 1905, P. L. 296, file within one week from the date of the rendition of the judgment by the alderman, in the office of the prothonotary, a certificate signed by the plaintiff naming the parties to the action in which said judgment was rendered and the magistrate by whom rendered, and setting forth therein the fact and date of the rendition of the said judgment and the amount thereof, petitioned that the writ of mandamus execution be stayed and that a rule be granted to show cause why the judgment entered and the execution based thereon should not be stricken from the record.

The requirements of the Act of 1905, page 296, read as follows:

"Section 1. Be it enacted, &c., That hereafter it shall be the duty of the plaintiff or plaintiffs in every judgment rendered by a justice of the peace or alderman of this Commonwealth, against any borough, township or school district of this Commonwealth, to file, within one week from the time of rendition of said judgment, with the prothonotary of the county in which such municipal corporation is situated, a certificate signed by the plaintiff or plaintiffs, naming the parties to the action in which said judgment was rendered, the magistrate by whom rendered, and setting forth the fact and date of the rendition of the same and the amount thereof.

"Section 2. That immediately upon the receipt of such certificate by the prothonotary of such county, he shall enter it of record in a book, kept by him in his office for that purpose, to be called the 'Record of Suits before Justices and Aldermen against Boroughs, Townships and School Districts,' setting forth therein the name of the plaintiff, the name of the defendant municipality, the sum for which judgment was entered, the date of its rendition, and the name of the justice or alderman by whom the judgment was given.

"Section 3. That for entering such certificate of record, the prothonotary shall receive the sum of fifty cents, for which, in every instance, the municipality against which the suit is brought shall be liable to the prothonotary.

"Section 4. That whenever in the case of any judgment rendered by any justice of the peace or alderman of this Commonwealth, against any borough, township or school district of this Commonwealth, the provisions of this act shall not be complied with, no transcript of such judgment may, at any subsequent time,

be filed in the office of the prothonotary, for any purpose whatsoever; and neither the justice's nor alderman's record of such judgment, nor any transcript or copy thereof, may be used as evidence in any proceedings to enforce or collect said judgment.

"Section 5. All laws or parts of laws inconsistent herewith are hereby repealed."

Plaintiff admits not having complied with the requirements of the said act, but avers that the same is unconstitutional. If the act is operative, clearly the judgment could not be recognized and the rule should be made absolute. But if said act is unconstitutional, as contended by the plaintiff, the rule should be discharged.

The unconstitutionality contended for by plaintiff is based upon the violation of article three, section seven of the Constitution of the Commonwealth of Pennsylvania, which provides:

"The General Assembly shall not pass any local or special law: . . .

"Regulating the practice or jurisdiction of, or changing the rules of evidence in, any judicial proceeding or inquiry before courts, aldermen, justices of the peace, sheriffs, commissioners, arbitrators, auditors, masters in chancery or other tribunals, or providing or changing methods for the collection of debts, or the enforcing of judgments, or prescribing the effect of judicial sales of real estate."

Legislation providing a new method for the collection of debts does not necessarily violate the constitutional provision, but when such legislation is not general in its operation and confines the benefit of the remedy to special persons, or groups of persons, it may be regarded as offending against the constitutional provision. As to the former, Sleichter et al. *v.* Com., 48 Pa. C. C. 539, held the Act of May 28, 1915, P. L. 616, unconstitutional; and the case of Somerset Contracting Co. *v.* Com., 48 Pa. C. C. 537, held the Act of April 19, 1917, P. L. 86, unconstitutional. As to the latter, Sumption *v.* Rogers (No. 1), 53 Pa. Superior Ct. 109, held that any provision of the Mechanic's Lien Act of June 4, 1901, P. L. 431, which is clearly divergent from and is an advance upon the law as it stood prior to the Constitution of 1874, is to be regarded as invalid, as offending against article three, section seven, of the Constitution. Such laws are deemed to be essentially special in their nature because they provide a method by which a special class of creditors may collect a special class of debts.

As stated by Mr. Justice Elkins in Vulcanite Portland Cement Co. *v.* Allison, 220 Pa. 382: "A fair construction of the constitution leads to the conclusion that the intention of its framers was . . . to prevent the enactment of local and special laws providing new methods or changing old ones and applicable only to particular localities or to special classes."

It is the contention of petitioner that the act in question does not apply to any one borough or boroughs, or to any one school district or school districts within the Commonwealth, but applies as well to all subdivisions of the state so classified, and it cites cases in support of legislative classification where this was upheld as reasonable and necessary.

We cannot follow the suggestion that the act can be sustained under the rule of classification. "The character of legislation relating to classification has been clearly defined to be such as relates to the existence and regulation of municipal power and to matters of local government. There is no reason why such legislation as the act in question should not apply to all municipalities alike, and its confinement to boroughs, school districts and townships brings it within that class of local legislation expressly prohibited by the constitution:" Fleming Mfg. Co. *v.* Hector Township (No. 1), 18 Dist. R. 730.

"Legislative power to nullify in this way the judgments rendered in due form of law by a court of competent jurisdiction may well be doubted, even in the absence of the constitutional provision to be referred to. But the selection for sacrifice of the creditors of a certain class of municipalities is believed to be in the very teeth of that clause of art. III, § 7, of the Constitution, which forbids the passage of any local or special law . . . providing or changing methods for the collection of debts or the enforcing of judgments:" McKenna v. Dunmore Borough, 17 Dist. R. 908.

There is no reason why the legislation should apply to boroughs, school districts and townships and not to counties and cities. It is plainly special legislation regulating the practice or jurisdiction in a judicial proceeding before an alderman, and providing or changing the method for the collection of a debt or the enforcing of judgments as to the particular municipalities cited.

The motion to strike off is denied and the rule to show cause based thereon is dismissed.

From Frank P. Slattery, Wilkes-Barre, Pa.